**Reversed and Remanded and Majority and Dissenting Opinions filed July 29, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00427-CV

---

**HOUSTON PROFESSIONAL FIRE FIGHTERS ASSOCIATION, IAFF LOCAL 341; PATRICK "MARTY" LANCTON; GABRIEL ANGEL DOMINGUEZ; ROY ANTHONY CORMIER; BRIAN RAY WILCOX; AND DELANCE SHAW, Appellants**

**V.**

**HOUSTON POLICE OFFICERS' UNION; CITY OF HOUSTON; MAYOR SYLVESTER TURNER; COUNCILMEMBERS AMY PECK, TARSHA JACKSON, ABBIE KAMIN, CAROLYN EVANS-SHABAZZ, DAVE MARTIN, TIFFANY D. THOMAS, GREG TRAVIS, KARLA CISNEROS, ROBERT GALLEGOS, EDWARD POLLARD, MARTHA CASTEX-TATUM, MIKE KNOX, DAVID ROBINSON, MICHAEL KUBOSH, LETITIA PLUMMER, AND SALLIE ALCORN; CONTROLLER CHRIS BROWN; AND FINANCE DEPARTMENT DIRECTOR TANTRI EMO, Appellees**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-85465**

---

## MAJORITY OPINION

Appellants Houston Professional Fire Fighters Association, IAFF Local 341, Patrick "Marty" Lancton, Gabriel Angel Dominguez, Roy Anthony Cormier, Brian Ray Wilcox, and Delance Shaw appeal the trial court's final judgment. For the reasons below, we reverse the trial court's judgment and remand the case for further proceedings.

### BACKGROUND

#### *The Fire and Police Employee Relations Act and the Houston City Charter Pay-Parity Amendment*

In 2003, the City of Houston adopted the Fire and Police Employee Relations Act ("FPERA") to govern Houston fire fighters' compensation, conditions of employment, and collective bargaining rights.[1] *See* Tex. Loc. Gov't Code Ann. §§ 174.001-174.253. In relevant part, the FPERA provides that fire fighters' compensation and conditions of employment shall be "substantially equal to" and "based on" comparable private sector employment. *Id*. § 174.021. Compliance with these guidelines may be secured through collective bargaining or, if necessary, through judicial enforcement. *See id*. §§ 174.023, 174.251.

In 2017, voters proposed a Houston city charter amendment to instate pay parity between Houston fire fighters and Houston police officers (the "pay-parity amendment"). Specifically, the pay-parity amendment provides that:

> The City of Houston shall compensate City firefighters in a manner
> and amount that is at least equal and comparable by rank and seniority
> with the compensation provided City police officers . . . .

---

[1] As implied by its title, the FPERA can also apply with respect to police officers' compensation, conditions of employment, and collective bargaining rights. *See* Tex. Loc. Gov't Code Ann. §§ 174.001-174.253. In Houston, however, the FPERA only was adopted with respect to fire fighters.

The pay-parity amendment also prescribes the comparable fire fighter and police officer classifications for the purposes of determining fire fighters' compensation.

The pay-parity amendment passed with a majority of the vote in the November 2018 election. Later that month, the city council passed "City of Houston Ordinance No. 2018-931", which formally adopted the pay-parity amendment as part of the Houston city charter.

### The Underlying Proceedings

In November 2018, the Houston Police Officers' Union ("the HPOU") sued the City of Houston (the "City") and the Houston Professional Fire Fighters Association, IAFF Local 341 ("the HPFFA"), seeking a declaratory judgment, a temporary restraining order, and a temporary and permanent injunction. The HPOU's petition requested the following declaratory judgments:

1. The pay-parity amendment is unconstitutional because it conflicts with section 174.021 of the FPERA.
2. The pay-parity amendment is void because the FPERA removes fire fighter pay from the initiative process.
3. The pay-parity amendment is void because the measure was submitted to voters through an invalid petition process.
4. The pay-parity amendment is void because it violates public policy.

The HPOU also requested that the trial court enjoin implementation of the pay-parity amendment on grounds that the amendment was void. The trial court granted a temporary restraining order and enjoined the City "from spending any taxpayer funds to implement the Pay-Parity Amendment."

In December 2018, the City filed an original answer as well as a counterclaim and cross-claim requesting the following declaratory judgments:

1. The pay-parity amendment is preempted by the FPERA.

3

2. The pay-parity amendment is unconstitutional because it violates article XI, section 5 of the Texas Constitution.

3. The pay-parity amendment is void because its subject matter has been withdrawn from the initiatory process field.

4. The pay-parity amendment is void because it does not comply with the requirements of Texas Local Government Code sections 141.023 and 174.053.

5. The pay-parity amendment is void because it is unconstitutionally vague.

On December 18, 2018, the trial court signed an order denying the HPOU's application for a temporary injunction and the City's application for a stay. The trial court's order also dissolved the temporary injunction that enjoined enforcement of the pay-parity amendment.

Five individual fire fighters then sought to join the suit as plaintiff-intervenors. Together with the HPFFA, the individual fire fighters asserted counterclaims against the City, Houston Mayor Sylvester Turner, and other city officials[2] for (1) a writ of mandamus compelling the city officials to pay fire fighters in accordance with the pay-parity amendment, and (2) breach of contract for the City's failure to pay fire fighters in accordance with the pay-parity amendment. The City and the city officials filed motions to strike the individual fire fighters' plea in intervention and to sever their claims and the HPFFA's counterclaims.

---

[2] Specifically, the other current city officials include Council members Amy Peck, Tarsha Jackson, Abbie Kamin, Carolyn Evans-Shabazz, Dave Martin, Tiffany D. Thomas, Greg Travis, Karla Cisneros, Robert Gallegos, Edward Pollard, Martha Castex-Tatum, Mike Knox, David Robinson, Michael Kubosh, Letitia Plummer, and Sallie Alcorn; and Controller Chris Brown. *See* Tex. R. App. P. 7.2 (automatic substitution of public officers). The parties treat Finance Department Director Tantri Emo as a public official, as opposed to a public employee. In light of our disposition of the appeal, we express no opinion on Director Emo's status as either a public official or public employee.

4

The City then filed a traditional motion for summary judgment. *See* Tex. R. Civ. P. 166a(c). The City requested judgment as a matter of law with respect to: (1) preemption under the FPERA, and (2) unconstitutionality under article XI, section 5 of the Texas Constitution.

The HPOU also filed a traditional motion for summary judgment. Like the City, the HPOU requested judgment as a matter of law on its declaratory judgment claims concerning the FPERA and unconstitutionality. The HPOU's motion also requested judgment on its claim that the voter petitions supporting the amendment did not meet the requirements of Texas Local Government Code section 141.034.

The HPFFA filed a combined traditional and no-evidence motion for summary judgment on the City's and the HPOU's declaratory judgment claims regarding the validity of the pay-parity amendment. The HPFFA also requested summary judgment on its mandamus claim, thereby compelling the city officials to comply with the pay-parity amendment.

The trial court signed a final judgment on May 15, 2019, that (1) granted the City's and the HPOU's motions for summary judgment, and (2) denied the HPFFA's motion for summary judgment. The trial court's final judgment contains the following declarations:

1.  [The pay-parity amendment], which amends and adds Section 24 to Article IX of the Houston City Charter, is preempted in its entirety by the [FPERA].

2.  [The pay-parity amendment], which amends and adds Section 24 to Article IX of the Houston City Charter, is unconstitutional and void in its entirety because it violates article XI, section 5 of the Texas Constitution.

The trial court's final judgment also states: "All relief not granted herein is denied. This is a final judgment disposing of all issues and is appealable."

5

The HPFFA and the individual fire fighters (collectively, the "Fire Fighter Appellants") filed a notice of appeal.

## ANALYSIS

In their appellate brief, the Fire Fighter Appellants raise three issues:

1.  The trial court erred by granting summary judgment in favor of the City and the HPOU and striking down the pay-parity amendment.

2.  The trial court should have granted the Fire Fighter Appellants' requested mandamus relief and compelled the city officials to implement the pay-parity amendment.

3.  This court should sever the HPFFA's breach of contract claim and the individual fire fighters' claims.

Separate appellate response briefs were filed by (1) the City and the city officials, and (2) the HPOU (together with the City and city officials, "Appellees"). We consider these issues below.

## I.    Preemption

In its final judgment, the trial court granted Appellees' motions for summary judgment and declared that the pay-parity amendment (1) was preempted by the FPERA, and (2) is unconstitutional because it violates article XI, section 5 of the Texas Constitution.

The FPERA contains an express preemption provision stating that it "preempts all contrary local ordinances, executive orders, legislation, or rules adopted by the state or by a political subdivision or agent of the state, including a personnel board, civil service commission, or home-rule municipality." Tex. Loc. Gov't Code Ann. § 174.005. In a similar vein, article XI, section 5 of the Texas Constitution states that:

> [t]he adoption or amendment of charters is subject to such limitations as may be prescribed by the Legislature, and no charter or any

6

ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State.

Tex. Const. art. XI, § 5. In the trial court and on appeal, the parties agree that the pay-parity amendment is subject to the same preemption analysis regardless of whether that analysis is undertaken pursuant to section 174.005 or article XI, section 5 of the Texas Constitution. Accordingly, we use the same examination to determine whether the pay-parity amendment is "contrary" to or "inconsistent with" the FPERA and the Texas constitution in such a way that renders the amendment preempted. *See* Tex. Const. art. XI, § 5; Tex. Loc. Gov't Code Ann. § 174.005.

In large part, Appellees argued in their motions for summary judgment the pay-parity amendment is contrary to section 174.021's prescription that fire fighters' compensation be "substantially equal to" and "based on" comparable private sector employment. *See* Tex. Loc. Gov't Code Ann. § 174.021. In addition, the City asserted that the pay-parity amendment is preempted by the FPERA's collective-bargaining provisions.

## A. Standard of Review and the Law Governing Preemption

When both parties move for summary judgment and the trial court grants one motion and denies the other, as here, we review both sides' summary judgment evidence and render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). When the trial court's summary judgment order specifies the ground on which it was granted, we generally limit our review to that ground. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996); *Hilburn v. Storage Trust Props., LP*, 586 S.W.3d 501, 507 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

7

As a home-rule municipality, the City of Houston derives its power from article XI, section 5 of the Texas Constitution. *See* Tex. Const. art. XI, § 5; *see also S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013). Home-rule cities possess the power of self-government and look to the Legislature only for limitations on their authority. *See* Tex. Loc. Gov't Code Ann. § 51.072(a); *S. Crushed Concrete, LLC*, 398 S.W.3d at 678.

The Texas Constitution states that no city ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." Tex. Const. art. XI, § 5. Accordingly, a home-rule city's ordinance is unenforceable to the extent it is inconsistent with a state statute preempting that particular subject matter. *BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016). But preemption is not a conclusion lightly reached — if the Legislature intended to preempt a subject matter normally within a home-rule city's broad powers, that intent must be evidenced with "unmistakable clarity". *S. Crushed Concrete, LLC*, 398 S.W.3d at 678 (quoting *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002) (orig. proceeding) (per curiam)). Therefore, "a general law and a city ordinance will not be held repugnant to each other if any reasonable construction leaving both in effect can be reached." *BCCA Appeal Grp., Inc.*, 496 S.W.3d at 7 (quoting *City of Beaumont v. Fall*, 291 S.W. 202, 206 (Tex. [Comm'n Op.] 1927)).

"[E]ntry of the state into a field of legislation . . . does not automatically preempt that field from city regulation." *City of Brookside Vill. v. Comeau*, 633 S.W.2d 790, 796 (Tex. 1982). Rather, "local regulation, ancillary to and in harmony with the general scope and purpose of the state enactment, is acceptable." *Id*. "Absent an express limitation, if the general law and local regulation can exist peacefully without stepping on each other's toes, both will be given effect or the

8

latter will be inconsistent only to the extent of any inconsistency." *City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586, 593 (Tex. 2018). "The question is not whether the Legislature *can* preempt a local regulation . . . but whether it *has*." *Id.* (emphasis in original).

To determine whether the Legislature intended to preempt a particular subject matter, we rely on a combined reading of the relevant statute and ordinance and an analysis of the terms used therein. *See, e.g.*, *BCCA Appeal Grp., Inc.*, 496 S.W.3d at 8-19. We review statutory construction *de novo*. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014). "In construing statutes our primary objective is to give effect to the Legislature's intent." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). We initially look to the text's plain meaning as the sole expression of legislative intent "unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015).

Before applying these principles to the underlying dispute, we first turn to the Fire Fighter Appellants' articulation of the applicable standard of review. In their appellate brief, the Fire Fighter Appellants argue that Appellees' preemption argument raises a "facial challenge" to the pay-parity amendment. We conclude that this standard is inapplicable to the preemption issue raised here.

A "facial challenge" addresses the constitutionality of a statute and requires the challenging party to show that the statute, by its terms, always operates unconstitutionally. *See Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995); *see also, e.g.*, *In re S.N.*, 287 S.W.3d 183, 193-94 (Tex. App.— Houston [14th Dist.] 2009, no pet.) (raising a facial challenge with respect to a

Texas Family Code provision, the appellant argued the provision always resulted in an unconstitutional deprivation of due process rights). This type of challenge generally sets a statute or ordinance against a particular constitutional provision or right, rather than another statute. *See, e.g.*, *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 473 (Tex. 1997) (raising a facial challenge, the appellees argued a certain statutory structure violated the Texas Constitution's separation of powers provision); *Tex. Alcoholic Beverage Comm'n v. Live Oak Brewing Co.*, 537 S.W.3d 647, 652, 659 (Tex. App.—Austin 2017, pet. denied) (raising a facial challenge, the appellees asserted a Texas Alcoholic Beverage Code provision violated the Texas Constitution's due course of law clause); *8100 N. Freeway, Ltd. v. City of Houston*, 363 S.W.3d 849, 855-56 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (raising a facial challenge, the appellant argued a City of Houston ordinance violated the First Amendment).

The Texas Supreme Court has not applied the "facial challenge" standard to determine whether an ordinance is preempted by a state statute. *See, e.g.*, *City of Laredo*, 550 S.W.3d at 593; *BCCA Appeal Grp., Inc.*, 496 S.W.3d at 7-8; *City of Houston v. Bates*, 406 S.W.3d 539, 546 (Tex. 2013); *S. Crushed Concrete, LLC*, 398 S.W.3d at 678; *Dallas Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490-91 (Tex. 1993). Rather, as stated above, the standard applied by the supreme court to preemption claims examines whether the Legislature's intent to preempt a particular subject matter can be discerned with "unmistakable clarity". *See City of Laredo*, 550 S.W.3d at 593; *BCCA Appeal Grp., Inc.*, 496 S.W.3d at 7; *Bates*, 406 S.W.3d at 546; *S. Crushed Concrete, LLC*, 398 S.W.3d at 678; *Dallas Merch.'s & Concessionaire's Ass'n*, 852 S.W.2d at 491. Accordingly, we apply the "unmistakable clarity" standard with respect to Appellees' preemption challenge to the pay-parity amendment.

10

**B.    Case Law Applying the Principles of Preemption**

In the past ten years, the Texas Supreme Court has repeatedly applied the principles outlined above to determine whether local ordinances are preempted by state statutes. We summarize these cases to guide our analysis of whether the pay-parity amendment is preempted by the FPERA.

In *City of Laredo v. Laredo Merchants Association*, the Texas Supreme Court examined whether a city ordinance preventing businesses from providing one-time-use plastic bags was preempted by state law. 550 S.W.3d at 589. Specifically, the Texas Solid Waste Disposal Act barred local governments from adopting ordinances to "'prohibit or restrict, for solid waste management purposes, the sale or use of a container or package in a manner not authorized by state law.'" *Id*. (quoting Tex. Health & Safety Code Ann. § 361.0961(a)(1)). Pointing out that the city ordinance's "stated purpose and its intended effect are to control the generation of solid waste" by limiting businesses' provision of plastic bags, the supreme court held that the ordinance clearly aimed "to manage solid waste, which the [Solid Waste Disposal] Act preempts." *Id*. at 595-96. Therefore, the ordinance fell "within the [Solid Waste Disposal] Act's ambit" and was preempted. *Id*. at 594, 598.

The Texas Supreme Court also considered the application of a narrow preemption statute in *Southern Crushed Concrete, LLC v. City of Houston*. 398 S.W.3d at 678-79. Section 382.113(b) of the Texas Clean Air Act states that a city ordinance "'may not make unlawful a condition or act approved or authorized under the [Texas Clean Air Act] or the [Texas Commission on Environmental Quality's ("TCEQ")] rules or orders.'" *Id*. at 679 (quoting Tex. Health & Safety Code Ann. § 382.113(b)). As the supreme court stated, this preemption statute "forbids a city from nullifying an act that is authorized by either the [Texas Clean

11

Air Act] or . . . [the TCEQ's] rules or orders." *Id*.

Relying on this statute, the appellant, Southern Crushed Concrete, challenged a City of Houston ordinance that made it unlawful to build a concrete-crushing facility at a location that was previously authorized by the TCEQ. *Id*. at 677. Pointing out that the express language of 382.113(b) "compel[led] [the court] to give effect to the Legislature's clear intent that a city may not pass an ordinance that effectively moots a [TCEQ] decision", the supreme court concluded that the city ordinance made unlawful an act previously authorized by the TCEQ's orders and was "thus preempted by the [Texas Clean Air Act] and unenforceable." *Id*. at 679.

In *BCCA Appeal Group, Inc.*, the Texas Supreme Court examined whether the Texas Clean Air Act and the Act's enforcement mechanisms in the Water Code preempted a Houston air-quality ordinance. 496 S.W.3d at 4-5. With respect to violations of air permitting statutes, the Water Code "mandate[d] administrative and civil remedies whenever possible" and reserved to the TCEQ the discretion to determine whether criminal proceedings would be instituted. *Id*. at 11-12. But under the Houston ordinance, any violation of the incorporated TCEQ rules was automatically treated as a criminal matter. *Id*. at 12.

Reviewing these provisions, the supreme court first noted that the Clean Air Act "unmistakably express[ed]" the Legislature's intent to preempt any ordinance "inconsistent" with the Act or with a TCEQ rule or order. *See id*. at 13 (under the Clean Air Act, municipalities were permitted to enact ordinances to control and abate air pollution as long as those ordinances were "'not inconsistent with [the Act] or [the TCEQ's] rules or orders'") (quoting Tex. Health & Safety Code Ann. § 382.113(a)(2), (b)). Concluding the city ordinance ran afoul of this provision, the supreme court noted that the ordinance authorized criminal prosecution

"without regard to the TCEQ's discretion to determine whether criminal prosecution is the only adequate and appropriate remedy" and made "no provision for civil enforcement or enforcement through administrative remedies — mechanisms favored under the [Texas Clean Air] Act and TCEQ rules and orders." *Id*. at 16. Therefore, because the ordinance authorized the City to enforce air-quality standards in a manner inconsistent with statutory provisions, those provisions of the ordinance were preempted. *Id*.

In *City of Houston v. Bates*, three fire fighters brought suit contending that a city ordinance limiting termination pay was preempted by state statute. 406 S.W.3d at 542-43. Specifically, under the Texas Local Government Code, fire fighters were entitled to a "base salary" plus additional types of compensation, including longevity pay, seniority pay, educational incentive pay, assignment pay, and shift differential pay. *Id*. at 547 (citing Tex. Loc. Gov't Code Ann. § 143.110(a), (b)). Fire fighters were also entitled to a lump-sum payment of accumulated vacation and sick leave upon termination, which was referred to as "termination pay". *Id*. at 542. Under the Texas Local Government Code, this termination pay was valued at a fire fighter's "salary" at the time the fire fighter accumulated the leave. *Id*. (citing Tex. Loc. Gov't Code Ann. §§ 143.115(b), 143.116(b)). But under a City of Houston ordinance, certain types of premium compensation, including education incentive pay and assignment pay, were excluded from the definition of "salary" for purposes of calculating accumulated benefit leave for termination pay. *Id*. at 542.

Construing "base salary" and "salary" as used in the Texas Local Government Code, the supreme court concluded that the statutory scheme preempted the City from excluding premium pay components from the definition of "salary" when calculating a fire fighter's termination pay. *Id*. at 548.

13

Accordingly, to the extent the ordinance limited the availability of premium pay as part of termination, it was preempted. *Id*. at 549.

As these four cases show, enforcement of the ordinances at issue evidenced an actual conflict with respect to a particular statute or statutory scheme; accordingly, those ordinances were preempted. *See City of Laredo*, 550 S.W.3d at 595-96, 598 (plastic bag ban preempted by statute that barred local governments from prohibiting the use of containers or packages for solid waste management purposes); *S. Crushed Concrete, LLC*, 398 S.W.3d at 679 (ordinance restricting a previously-approved concrete-crushing facility preempted by statute that prohibited ordinances from rendering unlawful an act previously authorized by the TCEQ); *BCCA Appeal Grp., Inc.*, 496 S.W.3d at 16 (ordinance that imposed mandatory criminal penalties preempted by statutory scheme that favored civil and administrative enforcement); *Bates*, 406 S.W.3d at 548-59 (ordinance limiting the pay included in "salary" for purposes of fire fighter termination pay preempted by statutory scheme that defined "salary" more broadly).

In contrast, ordinances that do not clearly intrude upon a statute or a statutory scheme are not preempted — rather, "the mere fact that the Legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted." *City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17, 19 (Tex. 1990). *City of Richardson* illustrates this principle. There, the City of Richardson adopted an ordinance regulating "vicious and dangerous" animals and providing a procedure for complaints about such animals. *Id*. at 18-19. The ordinance also provided that people owning pit bulls were required to register the pit bulls with the city and follow certain standards. *See id*. A group of citizens challenged the validity of this ordinance, asserting it was preempted by certain Penal Code provisions addressing requirements for persons

14

owning a dog that previously engaged in "vicious conduct". *Id*. at 17-18.

Addressing the ordinance and the relevant Penal Code provisions, the supreme court noted that "the ordinance is a comprehensive attempt to address the control of animals" whereas the Penal Code provisions were "much more limited in that [they] require[d] only that an owner restrain a dog and carry insurance coverage." *Id*. at 19. Moreover, the ordinance applied only to animals that may present a threat to citizens' safety and welfare; the Penal Code provision was a "first bite" law and its enforcement depended on a dog having already bitten someone. *Id*. Holding that the ordinance was not preempted, the supreme court stated that, "[a]lthough there is a small area of overlap in the provisions of the narrow statute and the broader ordinance, we hold that it is not fatal." *Id*. at 19.

Similarly, in *City of Port Arthur v. International Association of Fire Fighters, Local 397*, 807 S.W.2d 894 (Tex. App.—Beaumont 1991, writ denied), the Beaumont Court of Appeals examined whether a proposition that required mandatory, binding arbitration between the parties was preempted by the FPERA, which called only for voluntary arbitration. *See id*. at 896.

Addressing the FPERA's preemptive reach, the court of appeals stated:

We believe that if the legislature by enacting [the FPERA] intended to limit the authority of a home rule city in its initiative process then the legislature would have made that intention unmistakably clear. . . . [T]here is no provision in [the FPERA] that is so clear and so compelling and written with such unmistakable clarity as to require a conclusion that the legislature impliedly limited the power of the home rule city to propose on its own initiative a charter amendment containing the same subject matter as the one before . . . this court.

*Id*. at 900 (internal citations omitted). Concluding that the FPERA did not preempt the mandatory-arbitration ordinance, the court held that the FPERA "only encourages the parties to elect voluntary arbitration and even though that section

15

does not require compulsory arbitration it is, never-the-less, non-prohibitive of the peoples' exercise of their reserved power through the initiatory process." *Id.*

## C.     The Pay-Parity Amendment

Based on the cases set forth above, we conclude the FPERA does not evidence the Legislature's intent to preempt the pay-parity amendment with unmistakable clarity. *See S. Crushed Concrete, LLC*, 398 S.W.3d at 678. Rather, because a reasonable construction that leaves both in effect can be reached, the pay-parity amendment is not preempted. *See BCCA Appeal Grp., Inc.*, 496 S.W.3d at 7.

As discussed above, the FPERA "preempts" only those local ordinances "contrary" to its provisions. *See* Tex. Loc. Gov't Code Ann. § 174.005. Similarly, the Texas Constitution preempts local ordinances "inconsistent with" state laws, including the FPERA. *See* Tex. Const. art. XI, § 5.

> With respect to fire fighters' compensation, the FPERA provides as follows:
>
> A political subdivision that employs fire fighters . . . shall provide those employees with compensation and other conditions of employment that are:
>
> (1) substantially equal to compensation and other conditions of employment that prevail in comparable employment in the private sector; and
>
> (2) based on prevailing private sector compensation and conditions of employment in the labor market area in other jobs that require the same or similar skills, ability, and training and may be performed under the same or similar conditions.

Tex. Loc. Gov't Code Ann. § 174.021. In relevant part, the pay-parity amendment states:

> The City of Houston shall compensate City firefighters in a manner and amount that is at least equal and comparable by rank and seniority

16

with the compensation provided City police officers . . . .

The pay-parity amendment also prescribes the comparable fire fighter and police officer classifications for the purposes of determining fire fighters' compensation.

By establishing compensation that is "at least equal and comparable" to that provided to police officers, the pay-parity amendment establishes a minimum compensation standard. This standard may be construed as ancillary to and in harmony with those set forth in section 174.021 (whereby the pay-parity amendment establishes a compensation floor for fire fighters); the standards in section 174.021 further determine fire fighter compensation to the extent it exceeds that floor. This interpretation concerning the pay-parity amendment is not foreclosed by section 174.021, because section 174.021 does not prohibit the establishment of a compensation floor nor does it bar with "unmistakable clarity" the consideration of other factors to determine fire fighter compensation. Therefore, because a reasonable construction can be reached leaving both the FPERA and the pay-parity amendment in effect, the pay-parity amendment is not preempted. *See BCCA Appeal Grp., Inc.*, 496 S.W.3d at 7.

Appellees argue that this construction is fatal to the pay-parity amendment because, if fire fighter compensation is *lower* than that received by comparably-classified police officers, the police officer compensation controls and section 174.021's standards have no bearing on the fire fighters' compensation determination. But the converse reinforces our reasoning as to why preemption does not apply. If the fire fighter compensation as mandated by section 174.021's standards is *higher* than that received by comparably-classified police officers, section 174.021's standards control and the pay-parity amendment has no bearing on the compensation determination. Accordingly, depending on the context of their application, section 174.021 and the pay-parity amendment can both apply to

determine fire fighters' compensation. Because the pay-parity amendment does not always foreclose the application of section 174.021's standards, section 174.021 does not evidence with "unmistakable clarity" the intent to preempt the pay-parity amendment.

This conclusion aligns with the case law discussed above. In each of the cases in which the Texas Supreme Court concluded a local ordinance was preempted by a state statute or statutory scheme, enforcement of the ordinance always evidenced an *actual* conflict. *See, e.g.*, *City of Laredo*, 550 S.W.3d at 595-96, 598 (plastic bag ban always conflicted with law barring local governments from adopting ordinances restricting the sale or use of plastic bags); *S. Crushed Concrete, LLC*, 398 S.W.3d at 679 (ordinance made it unlawful to build concrete-crushing facility in locations previously-approved by the TCEQ); *BCCA Appeal Grp., Inc.*, 496 S.W.3d at 16 (ordinance that mandated criminal penalties always conflicted with statutory structure that favored administrative and civil remedies); *Bates*, 406 S.W.3d at 548-59 (ordinance that removed certain forms of pay from fire fighters' termination pay always conflicted with statutes drawing distinction between fire fighters' "salary" and "base salary"). Here, there is no such conflict.

Rather, as in *City of Richardson* and *City of Port Arthur*, there is overlap between the subject matter of section 174.021 and the pay-parity amendment. *See City of Richardson*, 794 S.W.2d at 19; *City of Port Arthur*, 807 S.W.2d at 900. But this overlap alone does not preempt that field from local regulation. *See City of Brookside Vill.*, 633 S.W.2d at 796. As stated above, a reasonable construction can be reached leaving both section 174.021 and the pay-parity amendment in effect. Section 174.021, by its express terms, does not foreclose the application of additional considerations with respect to fire fighter compensation. We will not infer that limitation where none exists.

18

Moreover, considering section 174.021 in light of other compensation statutes, it is clear the Legislature can establish an exclusive compensation structure when that is its objective. *See, e.g.*, Tex. Loc. Gov't Code Ann. § 141.007 ("If a member of the reserve force is compensated, the compensation must be based *only on* the time served by the member in training for, or in the performance of, official duties.") (emphasis added); Tex. Gov't Code Ann. § 803.301 ("The amount of a benefit payable by a retirement system . . . is based *solely on* a person's service credit in that system) (emphasis added); Tex. Ins. Code Ann. § 651.110(f)(3) ("the amount of compensation is based *only on* actual premiums financed . . . .") (emphasis added). In contrast, section 174.021 does not use "only", "solely", or any other exclusivity qualifiers with respect to its compensation standards. By its plain terms, section 174.021 does not specify its standards to be exclusive of all others. We decline to adopt that construction here. *See Bates*, 406 S.W.3d at 547-48 (the court "refuse[d] to adopt" a construction of "salary" that would render it interchangeable with "base salary").

The pay-parity amendment also aligns with the FPERA's broader purposes. *See City of Brookside Vill.*, 633 S.W.2d at 796 ("local regulation, ancillary to and in harmony with the general scope and purpose of the state enactment, is acceptable"). Defining the policies underlying the FPERA, section 174.002 states:

> (c) The health, safety, and welfare of the public demands that strikes, lockouts, and work stoppages and slowdowns of fire fighters and police officers be prohibited, and therefore it is the state's duty to make available reasonable alternatives to strikes by fire fighters and police officers.

>           \*            \*           \*

> (e) With the right to strike prohibited, to maintain the high morale of fire fighters and police officers and the efficient operation of the departments in which they serve, alternative procedures must be expeditious, effective, and binding.

19

Tex. Loc. Gov't Code Ann. § 174.002(c), (e). Moreover, section 174.004 also provides that the FPERA is to be "liberally construed." *Id*. § 174.004.

Subsection (c) posits that "reasonable alternatives" be available to fire fighters to secure the compensation and conditions of employment necessary to permit them to do their jobs effectively. *See id*. § 174.002(c). Here, a "reasonable alternative" was employed by the fire fighters to secure additional compensation standards that fire fighters (and a majority of those voting on the pay-parity amendment) deemed fair and reasonable. The FPERA does not explicitly foreclose the adoption of additional compensation standards. We will not conclude that the pay-parity amendment is preempted when that intention is not evidenced with unmistakable clarity. *See S. Crushed Concrete, LLC*, 398 S.W.3d at 678. Accordingly, the pay-parity amendment is not preempted by the FPERA.

Turning to an alternative argument, the City contends that preemption of the pay-parity amendment also may be premised on the FPERA's provisions addressing collective bargaining. We reject this contention.

Adopting collective bargaining as a method to enforce its guarantees, the FPERA states that "[t]he policy of this state is that fire fighters and police officers, like employees in the private sector, should have the right to organize for collective bargaining, as collective bargaining is a fair and practical method for determining compensation and other conditions of employment." Tex. Loc. Gov't Code Ann. § 174.002(b). Other provisions in the FPERA further outline the procedures for collective bargaining, including the designation of a bargaining agent, the duties of the public employer and the bargaining agent, and the effect of an agreement reached by the parties. *See id*. §§ 174.101-174.109.

These provisions do not foreclose the use of other processes to further address fire fighter compensation, such as a charter amendment. Specifically, the

FPERA states that:

> [o]n adoption of this chapter or the law codified by this chapter by a political subdivision to which this chapter applies, fire fighters, police officers, or both are entitled to organize and bargain collectively with their public employer regarding compensation, hours, and other conditions of employment.

*Id*. § 174.023. Neither this provision nor any other addressing collective bargaining states that it is the *only* process available to fire fighters to effect change with respect to their compensation and conditions of employment. Moreover, other collective-bargaining provisions indicate that those procedures apply specifically with respect to the benefits provided by the FPERA — not broadly with respect to any method that may be employed to adjust fire fighters' compensation or conditions of employment. *See, e.g.*, *id*. § 174.103(a) ("the fire and police departments of a political subdivision are separate collective bargaining units *under this chapter*") (emphasis added); *id*. § 174.105(a) ("If the fire fighters, police officers, or both of a political subdivision are represented by an association *as provided by Sections 174.101-174.104*, the public employer and the association shall bargain collectively.") (emphasis added); *id*. § 174.109 ("[a]n agreement *under this chapter* is binding and enforceable") (emphasis added).

The Legislature may, by general law, remove a particular field or subject from the initiatory process. *See Glass v. Smith*, 244 S.W.2d 645, 649 (Tex. 1951); *City of Cleveland v. Keep Cleveland Safe*, 500 S.W.3d 438, 448 (Tex. App.—Beaumont 2016, no pet.). "Such a limitation will not be implied, however, unless the provisions of the general law . . . are clear and compelling to that end." *Glass*, 244 S.W.2d at 649. The FPERA's collective-bargaining provisions fall short of that standard and fail to unmistakably evidence the Legislature's intent to preempt the pay-parity amendment or the process by which it was adopted. *See S. Crushed*

21

*Concrete, LLC*, 398 S.W.3d at 678; *Glass*, 244 S.W.2d at 649.

We conclude that the FPERA does not preempt the pay-parity amendment. Therefore, the trial court erred in its declarations that (1) the FPERA preempts the pay-parity amendment, and (2) the pay-parity amendment violates article XI, section 5 of the Texas Constitution.

## II.      The Parties' Remaining Issues

In addition to the preemption issue discussed above, the Fire Fighter Appellants and the HPOU raise other issues on appeal.

### A.      The Fire Fighter Appellants' Issues

In the trial court, the Fire Fighter Appellants asserted counterclaims against the City and city officials for (1) a writ of mandamus compelling the city officials to pay fire fighters in accordance with the pay-parity amendment, and (2) breach of contract for the City's failure to pay fire fighters in accordance with the pay-parity amendment. On appeal, the Fire Fighter Appellants assert that the trial court should have granted the requested mandamus relief and severed their counterclaims.

#### 1.      Request for a Writ of Mandamus

Asserting the pay-parity amendment "imposes a ministerial duty" on the city officials, the Fire Fighter Appellants requested a writ of mandamus compelling the city officials to implement the pay-parity amendment. The Fire Fighter Appellants sought the writ with respect to Mayor Turner, Controller Chris B. Brown, the sixteen members[3] of the Houston City Council, and Finance Department Director

---

[3] Specifically, the Fire Fighter Appellants named the following then-serving City Council members:  Brenda Stardig, Jerry Davis, Ellen Cohen, Dwight Boykins, Dave Martin, Steve Le, Greg Travis, Karla Cisneros, Robert Gallegos, Mike Laster, Martha Castex-Tatum, Mike Knox,

22

Tantri Emo.

A writ of mandamus may issue to compel public officials to perform ministerial acts. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991). "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *In re Woodfill*, 470 S.W.3d 473, 478 (Tex. 2015) (orig. proceeding) (per curiam) (internal quotation omitted). Generally, a party is entitled to mandamus relief against a public official when there is (1) a legal duty to perform a nondiscretionary act, (2) a demand for performance of that act, and (3) a refusal to perform. *Mattox v. Grimes Cty. Cmm'rs Court*, 305 S.W.3d 375, 380 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

Here, since the filing of the Fire Fighter Appellants' request for a writ of mandamus and the trial court's denial of the requested relief, eight of the 16 Houston City Council members have been changed.[4] The Fire Fighter Appellants have not shown that the reconstituted City Council has refused to take any action with respect to the pay-parity amendment. Because a writ of mandamus commands an individual to take specific action on pain of contempt, it may not issue against the current city officials for the actions of their predecessors. *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 228 (Tex. 2008) (orig. proceeding) ("Mandamus will not issue against a new judge for what a former one did."). Therefore, we overrule as premature the Fire Fighter Appellants' request that this court "render the judgment the trial court should have rendered" by ordering the

David Robinson, Michael Kubosh, Amanda Edwards, and Jack Christie.

[4] Houston's current City Council members include: Amy Peck, Tarsha Jackson, Abbie Kamin, Carolyn Evans-Shabaz, Dave Martin, Tiffany D. Thomas, Greg Travis, Karla Cisneros, Robert Gallegos, Edward Pollard, Martha Castex-Tatum, Mike Knox, David Robinson, Michael Kubosh, Letitia Plummer, and Sallie Alcorn.

clerk of this court to issue writs of mandamus directed to the current city officials.

## 2.     Severance of the Fire Fighter Appellants' Counterclaims

In the trial court, the City and the city officials filed motions to sever the Fire Fighter Appellants' counterclaims.  The trial court did not expressly rule on these motions but, in its final judgment, denied all relief not granted therein.  The Fire Fighter Appellants request on appeal that we sever their counterclaims against the City and the city officials.

"Any claim against a party may be severed and proceeded with separately." Tex. R. Civ. P. 41.  Accordingly, a trial court has broad discretion in determining whether claims should be severed and we review its decision only for an abuse of that discretion.  *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990); *Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 677 (Tex. App.—Houston [14th Dist.] 2016, no pet.).  In severing claims, courts look to avoid prejudice, do justice, and increase convenience.  *Yeske*, 513 S.W.3d at 677.

"A claim is considered properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues."  *Collins v. D.R. Horton-Tex. Ltd.*, 574 S.W.3d 39, 48 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).  The trial court may not order a severance if any of these three criteria are not met.  *Yeske*, 513 S.W.3d at 577.

Here, the Fire Fighter Appellants asserted counterclaims against the City and the city officials for (1) a writ of mandamus compelling the city officials to pay fire fighters in accordance with the pay-parity amendment, and (2) breach of contract for the City's failure to pay fire fighters in accordance with the pay-parity

24

amendment. As these allegations show, the Fire Fighter Appellants' counterclaims involve the interpretation and enforcement of the pay-parity amendment — issues central to the underlying proceeding. In sum, the counterclaims are interwoven with the declaratory judgment actions filed in the underlying proceeding and involve the same facts and issues; therefore, the trial court did not abuse its discretion by denying the City's and the city officials' motions to sever the Fire Fighter Appellants' counterclaims, and we overrule the Fire Fighter Appellants' issue on the denial of a severance. *See Collins*, 574 S.W.3d at 48; *Yeske*, 513 S.W.3d at 577.

### B.    The HPOU's Issue

In addition to its arguments addressing preemption, the HPOU asserts that the pay-parity amendment is void because it failed to satisfy the requirements for voter petitions on fire fighter pay as set forth in section 141.034 of the Texas Local Government Code.

In its original petition, the HPOU requested a declaratory judgment on this ground regarding whether the voter petitions complied with section 141.034. But the trial court's final judgment issued declarations only with respect to preemption under the FPERA and the Texas Constitution. The trial court's final judgment states that "[a]ll relief not granted herein is denied", which we construe to include the other requested declaratory judgments.

Under Texas Rule of Appellate Procedure 25.1, "[a] party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal" and the appellate court "may not grant a party who does not file a notice of appeal more favorable relief than did the trial court." Tex. R. App. P. 25.1. Here, the HPOU seeks judgment in its favor on a declaratory judgment claim the trial court denied, *i.e.*, an "alter[ation] [of] the court's judgment". However, the record does

25

not show that the HPOU filed a notice of appeal with respect to the trial court's judgment. Accordingly, we lack jurisdiction with respect to the HPOU's issue addressing section 141.034 of the Texas Local Government Code. *See id.*

**CONCLUSION**

We reverse the trial court's judgment and remand the case to the trial court for further proceedings.


/s/    Meagan Hassan
        Justice


Panel consists of Justices Wise, Spain, and Hassan (Wise, J., dissenting).