**CITY OF BROOKSIDE VILLAGE, Petitioner,**

v.

**Homer N. COMEAU, et ux., Respondents.**

**No. C-431.**

Supreme Court of Texas.

May 19, 1982.

Rehearing Denied June 30, 1982.

Manley, Hesson & Kuhlmann, William E. Kuhlmann, Pasadena, for petitioner.

John A. Wright, Jr., Houston, for respondents.

BARROW, Justice.

This is a suit for permanent injunction, brought by Homer N. Comeau and Hazel A. Comeau, to enjoin the City of Brookside Village from enforcing two ordinances relating to the location of mobile homes and to recover damages. The trial court, without a jury, held the ordinances were valid and constitutional and rendered a take nothing judgment against the Comeaus. The court of civil appeals affirmed the portion of the judgment ordering that the Comeaus take nothing by their suit but reversed and rendered the judgment of the trial court on the issue of the validity of the city's ordinances. 616 S.W.2d 333. It held the ordinances unconstitutional, as an unfair restriction on the use of property which served no legitimate state interest.[1] We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

The Comeaus are owners of a four acre lot in Brookside Village, a small "bedroom" community north of Pearland. A store and storage sheds are located on their lot. The Comeaus sought, by application to the city council, permission to place a mobile home on the premises for use as their residence. The request, presented in July of 1978, was denied by the council pursuant to the city's Mobile Home Code, ordinance numbers 58 and 78.[2] Subsequent to the council's denial of a permit for occupancy, the Comeaus brought this suit against the City.

The Comeaus contend that (1) the ordinances impose an arbitrary restriction on property use, not related to the preservation of the general health, safety, morals or welfare of the community and hence represent an unconstitutional exercise of police power; and (2) the ordinances attempt to regulate in an area preempted by federal and state law [3] and are thus invalid.

██ We turn first to consideration of whether ordinances restricting the location of mobile homes to mobile home parks and regulating the construction, operation and maintenance of such parks are valid under a municipality's grant of police power. Both parties concede that the ordinances in question are essentially zoning or land use ordinances. Zoning regulation is a recognized tool of community planning, allowing a municipality, in the exercise of its legislative discretion, to restrict the use of private property. *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Lombardo v. City of Dallas*, 124 Tex. 1, 73 S.W.2d 475 (1934). Judicial review of a municipality's regulatory action is necessarily circumscribed as appropriate to the line of demarcation between legislative and judicial functions. As stated previously by this Court: "A city ordinance is presumed to be valid . . . [and] . . . the courts have no authority to interfere unless the ordinance is unreasonable and arbitrary—a clear abuse of municipal discretion." *Hunt v. City of San Antonio*, 462 S.W.2d 536, 539 (Tex.1971); *see Thompson v. City of Palestine*, 510 S.W.2d 579 (Tex.1974). The party attacking the ordinance bears an "extraordinary burden" to show "that no conclusive

1. The court of civil appeals based its holding on the 1921 case of *Spann v. City of Dallas*, 111 Tex. 350, 235 S.W.2d 513, which questioned the validity of a zoning ordinance. The power of cities to enact zoning ordinances was fully upheld by the 1926 Supreme Court decision of *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303.

2. Ordinance number 58, enacted in 1970, pertains to regulation of the construction, operation and maintenance of mobile home parks in

Brookside Village. Ordinance 78, an amending ordinance to number 58, enacted in 1974, prohibits the location of mobile homes for use as a residence outside a mobile home park.

3. *See National Manufactured Housing Construction and Safety Standards Act of 1974*, 42 U.S.C. § 5401 *et seq.; Texas Manufactured Housing Standards Act*, Tex.Rev.Civ.Stat.Ann. art. 5221f (Supp.1981).

or even controversial or issuable fact or condition existed" which would authorize the municipality's passage of the ordinance. *Thompson v. City of Palestine, supra; City of Waxahachie v. Watkins,* 154 Tex. 206, 275 S.W.2d 477 (1955).

■■■ The City of Brookside Village has no comprehensive zoning plan. The ordinances before us nevertheless have the effect of a zoning regulation and are to be scrutinized under the aforementioned principles relating to a municipality's exercise of general police power.[4] We are directed to consider all circumstances and determine, as a substantive matter, if reasonable minds may differ as to whether a particular zoning regulation has a substantial relationship to the protection of the general health, safety or welfare of the public. If the evidence before this Court reveals an issuable fact in this respect, the restriction must stand as valid. *City of Waxahachie v. Watkins, supra; Charleston Homeowners Ass'n v. LaCoke,* 507 S.W.2d 876 (Tex.Civ.App.— Dallas 1974, writ ref'd n. r. e.).

Several considerations are advanced by petitioner in support of the council's enactment of ordinances 58 and 78. The city has no municipal water or sewage system, all water and sewage being provided by individual water wells and septic tanks. Potential water and sewage problems of living quarters placed too close together without adequate room for the necessary septic tank drainage area exist because of the geography of the area; the soil around and within

Brookside Village is a gumbo or clay of a poor absorption capability. The city's problem with septic tanks and water wells was stated as a major impetus to the passage of ordinance number 58, regulating mobile home parks. The higher incidence of fire in mobile homes, coupled with the need to insure sufficient water well placement for the city's small fire department was also cited as a concern addressed by the regulation.

As originally enacted, ordinance number 58 made allowance for the location of mobile homes outside a mobile home park, with limitations as to lot size. Ordinance 78 deleted such authorization, with the following inclusion: "Parking of mobile homes, camper buses, motor homes and camper trailers, for use as a residence, outside of a mobile home park shall be prohibited." The purpose of the enactment of ordinance number 78, as testified to by a member of the city council, was to control the location of mobile homes moving into the area, a constraint deemed necessary to protect property values and guard against the sewage and water problems by regulation of facilities.

■■■ The specific issues of a municipality's regulation of mobile home parks and restriction of location of mobile homes do not appear to have been previously addressed in this state.[5] We hold that such regulation of mobile homes represents °a valid exercise of a municipality's police power. The ordinances here in question

4. Because Brookside Village, a general law city, has no comprehensive zoning plan, the ordinances in question do not come under article 1011a, which embodies legislative authorization for zoning. *See* Tex.Rev.Civ.Stat.Ann. art. 1011c (zoning power must be exercised under comprehensive plan). A city, however, may regulate land use under its general police powers. *See City of San Antonio v. Pigeonhole Parking,* 158 Tex. 318, 311 S.W.2d 218 (1958); *City of Houston v. Johnny Frank's Auto Parts Co.,* 480 S.W.2d 774 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.). *See generally City of Sherman v. Simms,* 143 Tex. 115, 183 S.W.2d 415 (1944); *Lombardo v. City of Dallas,* 124 Tex. 1, 73 S.W.2d 475 (1934).

5. The question of mobile home regulation in Texas, where raised, has been disposed of on other grounds. *See Lassiter v. Bliss,* 559 S.W.2d 353 (Tex.1977) (restrictive covenant prohibition encompassing mobile homes); *City of Wichita Falls v. Streetman,* 607 S.W.2d 644 (Tex.Civ.App.—Fort Worth 1980, no writ) (city ordinance restricting location of mobile homes invalid because of failure to publish proper notice); *Williams v. Whitten,* 451 S.W.2d 535 (Tex.Civ.App.—Tyler 1970, no writ) (ordinance authorizing restriction of travel trailer park in absence of abutting property owners' consent as improper delegation of police power).

bear a substantial relationship to the public health, safety, morals or general welfare. They are not clearly arbitrary and unreasonable, and hence are not unconstitutional. In so holding, we align ourselves with the majority rule of other jurisdictions on the matter of mobile home regulation. *See generally* Annot., 42 A.L.R.3d 598 (1972).

The courts of other jurisdictions have recognized that mobile home parks pose special health problems and are amenable to regulations designed to eliminate such hazards. Regulation of mobile home parks finds additional support in the business nature of the use. The Supreme Court of Georgia, upholding an ordinance which regulated trailer camps and trailer sites in a township, summarized its rationale as follows:

> The congestion of living conditions inherent in a trailer park, together with the uncertainty as to sanitary conditions, including water, sewage, cooking, bathing and washing facilities, and the fact that the occupants of a trailer park may be to a large extent transitory, are all very patent reasons why such a business is so affected with a public interest as to make it a proper subject for legislative regulation under the broad police powers of the State.

*Nichols v. Pirkle*, 202 Ga. 372, 43 S.E.2d 306, 309 (1947). *See generally* 2 R. Anderson, *American Law of Zoning* §§ 11.49–.51 (1968). The record clearly reflects public health concerns particular to the City of Brookside Village to authorize regulation of mobile home parks.

The more specific issue raised herein deals with the city's prohibition as to location of mobile homes. It is well recognized that mobile homes are properly subject to regulation under the police power of towns. *See, e.g., Hornstein v. Lovett*, 221 Ga. 279, 144 S.E.2d 378 (1965); *Town of Plainfield v. Hood*, 108 N.H. 502, 240 A.2d 60 (1968); *State v. Albro*, 102 R.I. 410, 231 A.2d 1 (1967). *See also* C. Rhyne, *The Law of Local Government Operations* § 26.85 (1980). Other jurisdictions which have dealt with the question of restriction of mobile homes to designated areas generally have upheld such ordinances. *See* Annot., 96 A.L.R.2d 232, § 5 (1964). As noted by one court, the primary reason for restriction on mobile home location has been that "cities . . . found it easier to provide police and fire protection and to regulate health conditions, as well as to provide necessary services such as water, sewage, and lighting." *State v. Larson*, 292 Minn. 350, 195 N.W.2d 180, 184 (1972); *accord, e.g., State ex rel. Wilkerson v. Murray*, 471 S.W.2d 460 (Mo.), *cert. denied*, 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971); *Napierkowski v. Gloucester Tp.*, 29 N.J. 481, 150 A.2d 481 (1959); *People v. Clute*, 47 Misc.2d 1005, 263 N.Y. S.2d 826 (Co.Ct.1965), *aff'd*, 18 N.Y.2d 999, 278 N.Y.S.2d 231, 224 N.E.2d 734 (1966). In addition to health and safety hazards, the considerations of encouragement of the most appropriate use of land and conservation of property values have been found proper justification for regulation of the location and use of mobile homes, as integral to the protection of the general welfare. *E.g., Cooper v. Sinclair*, 66 So.2d 702 (Fla.), *cert. denied*, 346 U.S. 867, 74 S.Ct. 107, 98 L.Ed. 377 (1953); *Town of New Boston v. Coombs*, 111 N.H. 359, 284 A.2d 920 (1971); *Duckworth v. City of Bonney Lake*, 91 Wash.2d 19, 586 P.2d 860 (1978). *Cf. Town of Stonewood v. Bell*, 270 S.E.2d 787 (W.Va.1980) (community harmony as appropriate concern).

The Comeaus assert that ordinance 78 is invalid because mobile homes do not necessarily differ from site-built or conventional housing in relation to the required sewage and water facilities. Respondents argue that mobile homes constructed in accordance with state and federal standards are structurally as safe and aesthetically comparable to conventional housing, thus rendering the purported justification for dissimilar treatment of mobile homes arbitrary. In support of their argument, respondents refer us to the case of *Robinson Tp. v. Knoll*, 410 Mich. 293, 302 N.W.2d 146, 150–51 (1981), wherein it was said:

The mobile home today can compare favorably with site-built housing in size, safety and attractiveness. To be sure, mobile homes inferior in many respects to site-built homes continue to be manufactured. But the assumption that all mobile homes are different from all site-built homes with respect to criteria cognizable under the police power can no longer be accepted.

■ While we recognize the substantial improvements made in modern mobile homes, we do not perceive the similarities between mobile homes and conventional housing as sufficient to overcome the presumption of the ordinance's constitutionality. We find that adequate governmental interests are served by regulation of the location of mobile homes. Mobile homes, by definition, are manufactured to permit movement; the inherent structural differences in such manufactured housing can make them vulnerable to windstorm and fire damage; and their mobile nature may lead to transience and detrimentally impact property values if scattered throughout a municipality.

It is possible that the general improvements in appearance and quality of manufacture of mobile homes will persuade municipalities to alter ordinances similar to the one before us. Such changes, however, should be made through the legislative, not the judicial, process. This principle has its inception in judicial acknowledgment of zoning power.

State legislatures and city councils, who deal with the situation from a practical standpoint, are better qualified than the courts to determine the necessity, character and degree of regulation which these new and perplexing conditions require; and their conclusions should not be disturbed by the courts unless clearly arbitrary and unreasonable.

*Gorieb v. Fox,* 274 U.S. 603, 608, 47 S.Ct. 675, 677, 71 L.Ed. 1228 (1927), referring to *Village of Euclid v. Ambler Realty Co., supra.* The conditions of urban development addressed by the *Gorieb* court continue to exist in substance, as does the admonition against unwarranted judicial reordering of legislative schemes. With respect to mobile homes, the upgrading of the quality of such housing under federal and state construction standards may well serve to alleviate previous concerns as to their structural safety. But the fact remains that a large number of mobile homes, manufactured prior to the 1976 construction and safety standards acts, exist.[6] An adjudication of the appropriate measure of regulation of mobile homes constructed in conformance with federal and state standards is the prerogative of local and state governing bodies.

■ The position of the Comeaus, that ordinance number 78 is invalid as an arbitrary regulation violative of the Equal Protection Clause, is likewise founded on the similarities between mobile homes and conventional housing. The argument is based on the fact that both types of structures fall within the classification of "residences or dwellings." That mobile homes may be favorably compared with certain site-built homes or modular housing is not dispositive of the constitutional issue involved. As recognized in several jurisdictions, mobile homes are different and thus may be classified separately from other residential structures for purposes of regulation. *See, e.g., State ex rel. Wilkerson v. Murray, supra; Duckworth v. City of Bonney Lake, supra; Town of Stonewood v. Bell, supra; Currituck Co. v. Willey,* 46 N.C.App. 835, 266 S.E.2d 52 (1980). We find such classification reasonable, as bearing a substantial relation to the preservation of public health, safety, morals, or general welfare. The ordinances of Brookside Village do not prohibit the location of mobile homes in the municipality but rather require their placement in a regulated area

---

**6.** The record reflects that more than one-half of the mobile homes located in Brookside Village were manufactured before 1976.

to insure proper facilities are present and to preserve property values. Because all mobile home owners, desiring to use their structures as residences, are treated alike under ordinance number 78, no denial of equal protection is presented. *See Town of Ascarate v. Villalobos,* 148 Tex. 254, 223 S.W.2d 945 (1949).

■ The additional issue before us is whether the challenged ordinances are preempted by federal and state legislation. Our attention has been directed to the federal Manufactured Housing Construction and Safety Standards Act[7] and the Texas Manufactured Housing Standards Act.[8] Both the federal and state act contain preemption provisions, with regard to mobile home construction, safety and installation standards.[9]

■ Clearly, an ordinance which conflicts or is inconsistent with state legislation is impermissible. *Jere Dairy, Inc. v. City of Mt. Pleasant,* 417 S.W.2d 872 (Tex.Civ.App. —Texarkana 1967, writ ref'd n. r. e.). The entry of the state into a field of legislation, however, does not automatically preempt that field from city regulation; local regulation, ancillary to and in harmony with the general scope and purpose of the state enactment, is acceptable. *See City of Weslaco v. Melton,* 158 Tex. 61, 308 S.W.2d 18 (1957); *City of Beaumont v. Jones,* 560 S.W.2d 710 (Tex.Civ.App.—Beaumont 1977, writ ref'd n. r. e.).

The referenced state and federal legislation has, to an extent, preempted the field as to construction, safety, and installation of mobile homes. We find nothing in the statutes, however, that creates a conflict with the Brookside Village ordinances regulating the location of mobile homes. Accordingly, ordinances 58 and 78, insofar as they do not pertain to the subject matter of the regulation under the federal and state acts, are upheld as compatible with federal and state legislation.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.

---

7. 42 U.S.C. § 5401 *et seq.* (1974).

8. Tex.Rev.Civ.Stat.Ann. art. 5221f (Supp.1981).

9. *See* 42 U.S.C. § 5403(d): "Whenever a Federal mobile home construction and safety standard established under this title is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any mobile home covered, any standard regarding construction or safety applicable to the same aspect of performance of such mobile home which is not identical to the Federal mobile home construction and safety standard."

The Texas act provides as follows: "A political subdivision of this state, without the express approval of the department following a hearing on the matter, may not adopt different standards from those promulgated by the department for the construction or installation of manufactured housing within the political subdivision." Tex.Rev.Civ.Stat.Ann. art. 5221f, § 4(c).