

# The Attorney General of Texas

November 2, 1983

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Sam Kelley
Commissioner
Consumer Credit Commission
1011 San Jacinto Boulevard
Austin, Texas    78768

Opinion No. JM-85

Re: Are provisions of Corpus Christi city code regulating pawnshops inconsistent with section 10(b) of article 5069, V.T.C.S.

Dear Mr. Kelley:

You have requested our opinion as to whether the Corpus Christi Code of Ordinances [hereinafter "the code"] is in conflict with or is inconsistent with the Texas Pawnshop Act, article 5069-51.01 et seq., V.T.C.S., [hereinafter "the act"]. You inquire with respect to two provisions of the code as it regulates the pawnbroker business in Corpus Christi.

You first direct our attention to two provisions of the act. Article 5069-51.10(b) lists the information that a pledgor must give to the pawnbroker and which must appear on a pawn ticket:

> The pawnbroker, at the time the pawn transaction is entered, shall deliver to the pledgor a memorandum or ticket on which shall be clearly set forth the following:
>
>  . . . .
>
> (b) The name and address of the pledgor and the pledgor's description or the distinctive number from pledgor's driver's license or military identification . . . .

V.T.C.S. art. 5069, §51.10(b).

Article 5069-51.16(e) specifies when and how a pledgor may redeem property from a pawnbroker:

> A pawnbroker shall not:

. . . .

(e) Fail to return pledged goods to a pledgor upon payment of the full amount due the pawnbroker on the pawn transaction. In the event such pledged goods are lost or damaged while in the possession of the pawnbroker it shall be the responsibility of the pawnbroker to replace the lost or damaged goods with like kind(s) of merchandise. All such replacements are subject to the approval or rejection of the Commissioner.

You then direct our attention to two provisions of the code. As does article 5069-51.10(b) of the act, section 37-2 of the code lists information that a pledgor must give to the pawnbroker; this information, however, is for the pawnbroker's own records and not for printing on the pawn ticket.

It shall be the duty of every pawnbroker or secondhand dealer in the city, whether such pawnbroker or secondhand dealer is a resident or itinerant business, to keep a book, in a form approved by the chief of police, in which shall be legibly written in ink at the time of each loan or purchase an accurate account and description in the English language of all secondhand items pawned, pledged or purchased, the amount of money loaned thereon, or paid therefor, the date of pledging or purchasing of the same, the rate of interest to be paid on such loan, the name, residence address and telephone number of the person pawning, pledging or selling the items and an accurate description, including proof of identity, of the person pawning, pledging, or selling the items. A numbered identification shall be required for proof of identity and such numbered identification shall have a photograph for verification except where the pawnbroker or secondhand dealer has personal knowledge of the identity of the person pawning, pledging or selling the items. No entry made in such book shall be erased, obliterated or defaced. All such records shall be kept on file by the pawnbroker or secondhand dealer for a period of two (2) years. (Ord.No. 16140½, §1, 4-1-81).

As does article 5069-51.16(e) of the act, section 37-4 of the code deals with the pledgor's redemption of personal property from the pawnbroker.

No personal property received by a pawnbroker
or secondhand dealer on deposit or pledge or by
purchase shall be permitted to be redeemed or
removed from the place of business of such
pawnbroker or secondhand dealer or from the City
of Corpus Christi for a period of seventy-two (72)
hours after the close of business on the date such
item shall have been received by such pawnbroker
or secondhand dealer, nor shall any such property
be altered in any way or have any identifying
markings, names or numbers altered or obliterated
during such time. Where any pawnbroker or
secondhand dealer finds that such period will work
a hardship or constitute an undue burden, he may
so notify the chief of police or his designated
representative in writing of his need to act and
that the item or items are available for
inspection. Upon inspection and release of the
item or items by an officer of the police division
or the lapse of twelve (12) hours from the receipt
by the chief of police or his designated
representative of the required notification, the
seventy-two-hour waiting period shall be deemed to
have been satisfied. (Ord. No. 16140½, §1,
4-1-81; Ord. No. 17355, §1, 11-10-82).

Your inquiry concerns the relative authority of the code and the
act with respect to the pawnbroker's business in the city of Corpus
Christi. In answering your question, we note that a home rule city
such as Corpus Christi derives its powers not from the legislature but
from the Texas Constitution. Article XI, section 5, of the
constitution permits a city to enact ordinances which are neither
inconsistent with nor in conflict with the constitution or the general
statutes of the state of Texas. Tex. Const. art. XI, §5. Article
1165, V.T.C.S., contains a similar limitation on a home rule city's
powers; see also City of Beaumont v. Jones, 560 S.W.2d 710 (Tex. Civ.
App. - Beaumont 1977, writ ref'd n.r.e.). However, we also note that

[t]he entry of the state into a field of
legislation . . . does not automatically preempt
that field from city regulation; local regulation,
ancillary to and in harmony with the general scope
and purpose of the state enactment, is acceptable.

City of Brookside Village v. Comeau, 633 S.W.2d 790, 796 (Tex. 1982).

Our scrutiny of the questioned code provisions should be made in
light of the expressed purposes of the Texas Pawnshop Act as stated in
article 5069-51.01A below:

The making of pawn loans and the acquisition and disposition of tangible personal property by and through pawnshops vitally affects the general economy of this state and the public interest and welfare of its citizens.  To prevent frauds, unfair practices, discriminations, impositions, and abuses of the citizens of the state, it is the policy of this state and the purpose of the Texas Pawnshop Act to:

(1) exercise the state's police power to ensure a sound system of making pawn loans and acquiring and disposing of tangible personal property by and through pawnshops and to prevent unlawful property transactions, particularly in stolen property, through licensing and regulating pawnbrokers and certain persons employed by or in pawnshops;

(2) provide for licensing fees, investigation fees, and minimum capital requirements of licensees;

(3) ensure financial responsibility to the state and the public;

(4) ensure compliance with federal, state, and local laws, rules, regulations, and ordinances; and

(5) assist local governments in the exercise of their police power.

It is clear by subsections 4 and 5 of article 5069-51.01A that the legislature did not intend to preempt the field of pawnshop/pawnbroker regulation.  Accordingly, following the ruling in City of Brookside Village, supra, if the questioned provisions of the Corpus Christi Code of Ordinances are ancillary to and in harmony with the general scope and stated purposes of the Texas Pawnshop Act, those provisions of the code are permissible.

In our opinion, section 37-2 of the Corpus Christi Code of Ordinances is permissible.  Section 37-2 is strictly a recordkeeping requirement which applies to both pawnbrokers and secondhand dealers in the city of Corpus Christi.  It is our opinion that this section of the code does not conflict with but merely elaborates on the rather

>    each licensee shall keep, consistent with accepted
>    accounting practices, adequate books and records
>    relating to the licensee's pawn transac-
>    tions . . . .

V.T.C.S. art. 5069-51.09.  Section 37-2 of the code goes further and
specifies the particular information which must appear in the records
of pawnbrokers and secondhand dealers in the city of Corpus Christi.

It is important to note that there is more than one purpose in
requiring identification in a pawn transaction in keeping with the
express purposes of the Pawnshop Act.  Identification may be required
to ensure that the proper person receives the pawned goods upon
redemption -- "to ensure a sound system of making pawn loans and
acquiring and disposing of tangible personal property."  Further,
identification may be required to assist law enforcement authorities
in locating a person who has pawned stolen property or to hamper
thieves in the disposition of stolen goods -- "to prevent unlawful
property transaction, particularly in stolen property."  Article
5069-51.10(b) of the act effectuates the first purpose, and section
37-2 of the code the second.  They are neither inconsistent nor
conflicting, and the code provision is in harmony with and promotes
the purposes of the act.

Your question to us specifically addresses the possibility of a
conflict between section 37-2 of the code and article 5069-51.10(b) of
the act.  Although both sections require that a pledgor give certain
information about himself to the pawnbroker, the code is concerned
with the information that must appear in the pawnbroker's own records,
while the act is concerned with the information that must appear on
the pawn ticket.  Since the two sections regulate two different areas
-- pawnbroker records and pawn tickets -- there is no direct conflict;
further, since the two sections require very similar information --
identity of the pledgor and various proofs of this identity -- there
is no inconsistency.

In our opinion, section 37-4 of the Corpus Christi Code of
Ordinances conflicts with article 5069-51.16(e) of the Texas Pawnshop
Act, and the code provision is thereby unenforceable.  Section 37-4 of
the code states that

>    [n]o personal property received by a pawnbroker or
>    secondhand dealer on deposit or pledge or by
>    purchase shall be permitted to be redeemed or
>    removed from the place of business of such
>    pawnbroker or secondhand dealer or from the city
>    of Corpus Christi for a period of seventy-two (72)
>    hours after the close of business on the date such

item shall have been received by such pawnbroker or secondhand dealer . . . .

Article 5069-51.16(c) of the act clearly prohibits the pawnbroker from failing "to return pledged goods to the pledgor upon payment of the full amount due the pawnbroker . . . ." Section 37-4 of the code, insofar as it applies to pawnbrokers and pawn transactions, clearly conflicts with article 5069-51.16(e) of the act since the former disallows redemption by the pledgor for 72 hours  even if the pledgor is willing to repay the full amount of his pawn loan.

## S U M M A R Y

Section 37-2 of the Corpus Christi Code of Ordinances does not conflict the Texas Pawnshop Act. Section 37-4 of the Corpus Christi Code of Ordinances does conflict with the Texas Pawnshop Act.

Very truly yours

JIM   MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
David Brooks
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton