

**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

October 18, 2023

The Honorable Brandon Creighton
Chair, Senate Committee on Education
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

**Opinion No. KP-0446**

Re: Questions relating to the powers and duties of the Galveston Park Board of Trustees (RQ-0507-KP)

Dear Senator Creighton:

You generally ask about the powers and duties of the Galveston Park Board of Trustees (the "Board").[1] Your request suggests the City of Galveston (the "City") may be encroaching on the Board's statutory authority, but you do not provide background facts about any particular dispute.[2] *See* Request Letter at 1.

You pose three questions regarding the Board's powers under Local Government Code chapter 306 and ability to use a portion of the City's hotel occupancy tax ("HOT") for the purposes set forth in Tax Code section 351.105. *Id.* First, you ask whether the City may "limit the Park Board's powers granted by the State" in Local Government Code chapter 306. *Id.*; *see generally* TEX. LOC. GOV'T CODE §§ 306.001–.055. Second, you inquire whether the City may exercise control over HOT funds appropriated to the Board under Tax Code subsection 351.105(f). Request Letter at 1; TEX. TAX CODE § 351.105(f). Third, you question whether the City may remove a previous designation made pursuant to Local Government Code subsection 306.031(a) that placed

---

[1]*See* Letter from Honorable Brandon Creighton, Chair, Senate Comm. on Educ., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Apr. 20, 2023), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2023/RQ0507KP.pdf ("Request Letter").

[2]This office received briefs from the Board and the City providing additional background information. *See* Brief from Donald S. Glywasky, City Att'y, City of Galveston (May 23, 2023) (on file with the Op. Comm.) ("City Brief"); Brief from Ashley L. White and James E. Byrom, Thompson & Horton LLP (May 24, 2023) (on file with the Op. Comm.). However, this office does not "investigate and resolve disputed questions of fact" as part of the opinion process. Tex. Att'y Gen. Op. No. GA-0750 (2009) at 2. Instead, "we rely on the facts [the requestor has] provided and note that additional or different facts may result in a different conclusion in a given case." Tex. Att'y Gen. Op. No. JC-0203 (2000) at 2.

a park or facility under the Board's management and control. Request Letter at 1; TEX. LOC. GOV'T CODE § 306.031(a).

The core of your first and third questions is whether City ordinances limiting the Board's powers are preempted by chapter 306.[3] We thus begin by reviewing the legal framework for state law preemption of local ordinances.

**A municipal ordinance is preempted to the extent it is inconsistent with state law.**

The Texas Constitution vests "[t]he Legislative power" of state government in the Texas Senate and House of Representatives. TEX. CONST. art. III, § 1. The Constitution also sets forth the means by which home-rule municipalities such as the City[4] may adopt or amend their own charters, subject to the limitation that "no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." *Id.* art. XI, § 5(a). The Texas Supreme Court has made clear that "[w]hile home-rule cities have all power not denied by the Constitution or state law, and thus need not look to the Legislature for grants of authority, the Legislature can limit or withdraw that power by general law." *City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586, 592 (Tex. 2018).

"A statutory limitation of local laws may be express or implied, but the Legislature's intent to impose the limitation must appear with unmistakable clarity." *Id.* at 593 (footnote and quotation marks omitted). Clear and unmistakable intent is thus "the critical inquiry in determining whether an ordinance is preempted . . . ." *BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 8 (Tex. 2016). Courts employ the ordinary rules of statutory interpretation when construing express preemption provisions, looking initially "to the plain meaning of the text as the sole expression of legislative intent[.]" *Id.* In applying such a provision, courts do not allow a municipality to "circumvent" the statute or "vitiate" its procedures "by merely passing an ordinance that purports to regulate something other than" the relevant statutory framework. *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 679 (Tex. 2013).

Where the question is one of implied preemption, "a general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached." *City of Beaumont v. Fall*, 291 S.W. 202, 206 (Tex. [Comm'n Op.] 1927); *see also McCutcheon v. Wozencraft*, 294 S.W. 1105, 1106 (Tex. 1927) (invalidating an ordinance due to

---

[3]The Texas Legislature added Local Government Code section 51.002 during the Eighty-eighth regular legislative session through House Bill 2127. *See* Act of May 19, 2023, 88th Leg., R.S., ch. 899, § 11, 2023 Tex. Sess. Law Serv. 2873, 2876. That provision provides that "the governing body of a municipality may adopt, enforce, or maintain an ordinance or rule only if the ordinance or rule is consistent with the laws of this state." TEX. LOC. GOV'T CODE § 51.002. Section 51.002 is subject to ongoing litigation. *See State of Texas v. City of Houston*, No. 03-23-00531-CV (Tex. App.—Austin Aug. 30, 2023, no pet. h.). "It is a long-standing policy of this agency to decline to answer, through the opinion process, a question that is the subject of pending litigation." Tex. Att'y Gen. Op. KP-0427 (2023) at 2. We therefore do not address the potential preemptive effect of Local Government Code section 51.002 for purposes of this opinion and instead confine our analysis to "the enabling legislation" found in Local Government Code chapter 306 that you reference in your request. *See* Request Letter at 1.

[4]The City is a home-rule municipality. *See* Tex. Att'y Gen. Op. No. GA-0851 (2011) at 1 n.2 (citing the Texas Supreme Court's recognition of Galveston as a home-rule city in *City of Galveston v. Hill*); *see also* City Brief at 1.

its "direct conflict" with a state statute). Additionally, "[t]he mere entry of the state into a field of legislation . . . does not automatically preempt that field from city regulation."[5] *City of Laredo*, 550 S.W.3d at 593 (quoting *City of Brookside Vill. v. Comeau*, 633 S.W.2d 790, 796 (Tex. 1982)). Nonetheless, even absent an express preemption provision, "[t]he Texas Constitution prohibits city ordinances that conflict with state law." *Hotze v. Turner*, 672 S.W.3d 380, 387 (Tex. 2023).

With that background, we address your first and third questions.

**A home-rule municipality may not limit the powers granted to a park board by Local Government Code chapter 306.**

You first ask whether the City may by ordinance limit the powers granted to the Board under Local Government Code chapter 306. Request Letter at 1. Your request letter alludes to some Board activities associated with chapter 306 but does not identify specific limitations imposed by the City. *Id.* Accordingly, we provide general guidance regarding the legal framework for determining whether chapter 306 preempts a home-rule municipality's ordinance.

Chapter 306 authorizes home-rule municipalities with a population of more than 40,000 to pass an ordinance creating a "Park Board of Trustees for the purpose of acquiring, improving, equipping, maintaining, financing, or operating parks." TEX. LOC. GOV'T CODE §§ 306.001, .011. Qualifying municipalities exercising this authority may designate parks and facilities for the park board to manage and control. *Id.* § 306.031(a). Chapter 306 also requires a park board to fulfill certain responsibilities, including to "improve, manage, operate, maintain, equip, and finance . . . the parks and facilities placed by ordinance under its management and control" as well as any "additional parks and facilities acquired by gift[.]" *Id.* § 306.031(d). Among the many powers granted, a park board is authorized to lease to others any land placed under its management and control so long as the lease term does not exceed forty years. *Id.* § 306.038(b).

Notably, chapter 306 contains an express preemption provision. Local Government Code section 306.003 states that the "chapter is cumulative of home-rule charter provisions, but this chapter takes precedence in the event of a conflict." *Id.* § 306.003. While you ask about the effect of chapter 306 on ordinances rather than charter provisions, section 306.003 may be relevant since a "municipality can exercise only such powers as are expressly granted by the charter, or those which may be reasonably implied from the powers granted, or those that are incidental to the purpose for which the corporation was created." *Cent. Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 612 (Tex. App.—Corpus Christi-Edinburg 1998, pet. dism'd w.o.j.); *see also Powell v. City of Houston*, 628 S.W.3d 838, 842 (Tex. 2021) (recognizing a home-rule municipality "derives its authority from the Texas Constitution and the City Charter adopted by its voters").

---

[5]State courts typically do not look to federal cases regarding preemption when analyzing whether a state statute preempts a municipal ordinance because the doctrines do not mirror each other precisely. *BCCA Appeal Grp.*, 496 S.W.3d at 7–8 n.5. For example, under federal preemption analysis, "[i]mplied preemption may take two forms: field preemption and conflict preemption." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 200 (5th Cir. 2013). For purposes of state preemption, the Legislature instead may establish its intent to occupy a particular field by enacting an express preemption provision to that effect. *See, e.g.*, TEX. HEALTH & SAFETY CODE § 486.005 (stating "this chapter constitutes the whole field of regulation" and "preempts and supersedes" local measures related to over-the-counter sales of ephedrine-related products).

You do not, however, direct us to any charter provision or ordinance passed thereunder that might conflict with chapter 306 and thus be inconsistent with section 306.003. Nonetheless, any preemption analysis should begin with section 306.003 given its express terms. If you find section 306.003 inapplicable, you should then consider whether the relevant ordinance is impliedly preempted.

Because you do not describe any particular conflict between the City's ordinances and chapter 306, we generally discuss some circumstances under which preemption may occur. An ordinance is likely preempted where it is impossible for a regulated party to comply with both the ordinance and a state statute. *See* Tex. Att'y Gen. Op. No. GA-1035 (2014) at 2 (stating that provisions conflict irreconcilably if "it is impossible to comply with both provisions at the same time"); *but see* Tex. Att'y Gen. Op. No. GA-0526 (2007) at 3 (concluding local restrictions were not preempted where a regulated party "may comply with both" the state statutes and municipal ordinances). Further, this office has opined that "while a municipal ordinance may impose more stringent standards than a statute on the same subject in many instances, one that serves to narrow or restrict a state statute could be determined by a court to conflict with the statute." Tex. Att'y Gen. Op. No. KP-0034 (2015) at 4; *see also* Tex. Att'y Gen. Op. No. KP-0274 (2019) at 3 (concluding that an ordinance imposing a shorter deadline for compliance could not be harmonized with a statute's longer compliance period). Finally, an ordinance that clearly contravenes the Legislature's purposes or objectives for enacting a state statute may also be preempted. *Compare ESI/Emp. Sols., L.P. v. City of Dallas*, 531 F. Supp. 3d 1181, 1192 (E.D. Tex. 2021) (stating that "where the purpose of the state legislation is frustrated by concurrent operation of a municipal ordinance, the ordinance will be unenforceable"), *with City of Brookside Vill.*, 633 S.W.2d at 796 (Tex. 1982) (stating, on the other hand, that a "local regulation, ancillary to and in harmony with the general scope *and purpose* of the state enactment, is acceptable" (emphasis added)). Where such circumstances exist, a court could conclude an ordinance enacted by the City is preempted to the extent it conflicts with Local Government Code chapter 306.

**A court would likely conclude a home-rule city may remove parks or facilities from a park board's management and control.**

Your third question also implicates a home-rule municipality's authority under Texas Constitution article XI, section 5. In it you ask whether the City may remove previously designated parks and facilities from the Board's management and control. Request Letter at 1. As referenced above, subsection 306.031(a) provides that "[t]he ordinance establishing the board shall designate the parks and facilities owned by the municipality to be placed under the management and control of the board." TEX. LOC. GOV'T CODE § 306.031(a). It further provides that "[t]he municipality may from time to time by ordinance designate additional parks and facilities to be under the management and control of the board." *Id.* However, nothing in section 306.031 specifically, or chapter 306 in general, provides for the City's removal of a previous designation.

The absence of express authorization in chapter 306 does not necessarily mean the City lacks power to remove properties from the Board's management and control, as home-rule municipalities "look to the Legislature not for grants of power, but only for limitations on their power." *Builder Recovery Servs. v. Town of Westlake*, 650 S.W.3d 499, 503 (Tex. 2022) (quoting *Town of Lakewood Vill. v. Bizios*, 493 S.W.3d 527, 531 (Tex. 2016)). Thus, whether the City

possesses such authority is largely dependent on the legitimate powers expressly or impliedly supplied by its charter or incidental to the purpose for its creation. Out of deference to city officials' authority to interpret their own charter, this office typically does not construe municipal charter provisions. Tex. Att'y Gen. Op. No. KP-0062 (2016) at 3. Here, we assume without deciding that the City possesses removal power pursuant to its charter for the limited purpose of addressing whether chapter 306 preempts such removal.

Regarding preemption, mere "[s]ilence on the part of the state does not give rise to an inference that the state has prohibited localities from enacting ordinances further regulating an area." *RCI Ent. (San Antonio), Inc. v. City of San Antonio*, 373 S.W.3d 589, 597 (Tex. App.—San Antonio 2012, no pet.) (quoting *J & B Ent., Inc. v. City of Jackson*, 152 F.3d 362, 379 (5th Cir. 1998)); *see also* Tex. Att'y Gen. Op. No. KP-0274 (2019) at 3. Instead, a statute's "silence supports a conclusion that the [L]egislature did not preempt that subject matter with unmistakable clarity." *Santander Consumer USA, Inc. v. City of San Antonio*, No. 04-20-00341-CV, 2020 WL 7753730, at *5 (Tex. App.—San Antonio Dec. 30, 2020, no pet.) (mem. op.). Because the Legislature has not spoken to the issue of removal, a court would likely find chapter 306 does not preempt a home-rule city from removing a property from a park board's management and control.

> **The terms of the contract required by Tax Code subsection 351.105(f) likely will determine the extent to which the City may exercise control over HOT funds allocated under that provision.**

Your second question is whether the City may exercise control over the Board's use of HOT revenue "after the funds are appropriated to the Park Board[.]" Request Letter at 1. You indicate the funds at issue were allocated pursuant to Tax Code subsection 351.105(f).[6] *Id.* Tax Code section 351.105 requires an eligible coastal municipality that meets certain tax rate thresholds to dedicate portions of HOT revenue to specified purposes. TEX. TAX CODE § 351.105(a)–(d). Subsection 351.105(f) allows those funds to be allocated to a park board as follows:

> (f) An eligible coastal municipality and a park board of trustees created by the municipality may:
>
> > (1) contract for the park board to use the tax authorized by this chapter as provided by this section; and
> >
> > (2) without further authorization, use the tax authorized by this chapter as provided by this section, including for the purpose of issuing bonds or entering into other agreements.

*Id.* § 351.105(f). By its plain language, subsection 351.105(f)(2) provides that a park board may use HOT funds "without further authorization" beyond the contract authorized by subsection

---

[6]Given your reference to subsection 351.105(f), our analysis is limited to HOT funds allocated for the Board's use under that provision. *See* Request Letter at 1.

351.105(f)(1).[7] *Id.* § 351.105(f)(2); *see also Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) ("In interpreting statutes, we must look to the plain language, construing the text in light of the statute as a whole.").

Tax Code section 351.105 contains no framework for municipal control of these funds once allocated under contract to a park board. We therefore cannot conclude section 351.105 authorizes the City to exercise control over such funds following their allocation to the Board. Instead, the contract entered into under subsection 351.105(f)(1) will determine the extent to which the City may maintain control over funds allocated under subsection 351.105(f). As we do not interpret contracts in the opinion process, it is for the City and the Board to construe any relevant contractual terms. *See* Tex. Att'y Gen. Op. No. KP-0350 (2021) at 2 (explaining "this office does not ordinarily construe contracts" in the opinion process).

---

[7]Subsection 351.105(f)(2) should be construed in accordance with the contract referenced in subsection 351.105(f)(1). The word "and" connects these subsections and indicates the contract in subsection (f)(1) is the "authorization" referenced in subsection (f)(2). *See In re Brookshire Grocery Co.*, 250 S.W.3d 66, 69–70 (Tex. 2008) (stating that "and" is conjunctive and thus "the words 'and' and 'or' are not interchangeable" (quoting *Bayou Pipeline Corp. v. R.R. Comm'n*, 568 S.W.2d 122, 125 (Tex. 1978))). Additionally, reading subsection 351.105(f)(2) in isolation would be nonsensical, as the result would be that "[a]n eligible coastal municipality and a park board of trustees created by the municipality may" *both* use the HOT funds "without further authorization," creating a conflict as to which entity is entitled to use the tax. TEX. TAX CODE § 351.105(f).

## S U M M A R Y

Local Government Code chapter 306 authorizes certain municipalities to create a park board and gives such boards certain powers and responsibilities. While a home-rule municipality has the full power of self-government, it may not impose measures on a park board that conflict with state law.

Because the Legislature has not spoken to the issue of removal in chapter 306, a court would likely find the chapter does not preempt a municipal ordinance removing a park or facility from the park board's management and control.

Tax Code section 351.105 allows eligible coastal municipalities to contract for a park board to use a portion of the hotel occupancy tax for certain statutory purposes without further authorization beyond the contract. The extent to which a municipality may exercise control over the use of hotel occupancy tax funds allocated under section 351.105 will be determined by the provisions of the contract required by subsection 351.105(f)(1).

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

AUSTIN KINGHORN
Chair, Opinion Committee

J. AARON BARNES
Assistant Attorney General, Opinion Committee