**Reverse and Remand and Memorandum Opinion filed August 20, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00593-CV

---

**THE CITY OF BAYTOWN, Appellant**

**V.**

**JOVITA LOPEZ, Appellee**

---

**On Appeal from the Co Civil Ct at Law No 4**
**Harris County, Texas**
**Trial Court Cause No. 1200179**

---

## MEMORANDUM OPINION

Three dogs attacked and killed another dog. The City seized the attackers and took them into custody. Within two months of the attack, the municipal court determined each of the dogs to be a "Dangerous Dog" within the meaning of the City's ordinance and ordered the dogs to be euthanized. The owner of the three dogs appealed the decision to the county court. Following an evidentiary bench trial in the county court, the county court issued an order affirming the municipal court's dangerous-dog determination, but implicitly vacating the euthanasia order.

Drawing from both the City's ordinance and the county's regulations applicable to dogs determined to be "Dangerous Dogs," the county court assessed an alternative penalty which imposed conditions on the release of the dogs as well as obligations continuing with the life of the ownership of the dogs.

The City does not challenge the county court's decision to allow Lopez's pets to live, but it appeals the trial court's order releasing them under conditions inconsistent with the City's ordinance.

Today, because we conclude that the county court's order releasing the dogs was contrary the plain language of the City ordinance and that the ordinance was not shown to be unreasonable and arbitrary, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2023, the presiding judge of Baytown's Municipal Court issued a "Warrant for the Seizure of Dangerous Dogs" based on a supporting affidavit of a local animal control officer describing events occurring the previous month where three pitbull dogs breached a delipidated dividing fence.[1] Arya, a white Labrador, was found dead in her owner's backyard after her neighbor's three pitbulls collectively attacked and ultimately killed her.

The pitbull dogs were taken into custody by the City's animal control authority on January 31, 2023. On February 2, 2023, the owner of the three pitbulls, appellee Jovita Lopez, was personally served with the notice.

On the date of the hearing, the City of Baytown filed a "Petition for Declaration" seeking declaration that Lopez's dogs are "dangerous dogs" under Baytown Code of Ordinances § 14-152. The same day, the Municipal Judge

---

[1] The affidavit was based in part of the officer's review of surveillance videos depicting the attack recovered by Arya's owner. The videos were also offered at each of the trials.

signed an Order declaring Lopez's pitbulls, Heaven, Bubba, and Porsha, to be "Dangerous Dogs" and ordered all three dogs to be euthanized as authorized by Section 14-153 of the City of Baytown Code of Ordinances.

On February 15 and 16, Jovita Lopez filed, respectively, her notice of appeal and amended notice of appeal, appealing the Municipal Court's Order to Harris County Court at Law No. 4. Bond was set at $2,500 by the municipal court and Lopez paid the bond.

After the case was situated in the county court, two hearings and two orders followed.

The first hearing, which could be regarded as the trial on the merits, took place on March 22, 2023. At this hearing the City and Lopez presented testimony and evidence regarding the "Dangerous Dog" determination. Though Lopez did not contest the acts of her three dogs, she presented evidence of their gentle nature, and her attorney argued that Baytown's municipal law conflicts with the Health & Safety Code and should not apply.[2] Specifically, the City's ordinance, unlike the State's code provision (or the County's similar regulation), provides a more expansive definition of a "dangerous dog" to include a dog that has "attacked and killed or severely wounded another animal[3] without provocation" outside its enclosure. Because the court wanted to review legal issues raised at the hearing, the court took the matter under advisement.[4]

On April 10, 2023, the county court issued its order on the merits of the case

---

[2] Though raised in the trial court, appellee does not challenge the Baytown ordinance's expansion of the "dangerous dog" definition on appeal or the trial court's dangerous dog finding.

[3] Notably, for purposes of the applicable section of the Baytown Code of Ordinances, "the term 'animal' excludes a wild animal."

[4] Though relevant to our background, little if any of the March 22, 2023 hearing is significant to the merits of the City's appeal.

(the April 10 Order). The April 10 Order: (1) denies Lopez's appeal of the municipal court's Dangerous Dog determination, and independently determined the dogs to be Dangerous Dogs; (2) orders Lopez to comply with sections 14-154 and 14-155 of the Baytown Code of Ordinances and for Lopez to reimburse the City for any costs incurred "in seizing, acceptance, impounding, and boarding" of her three dogs; and (3) defines certain specific violations and others by general reference to Harris County regulations[5] that would prompt Lopez's dogs to be "subject to destruction as outlined in. . . Section 14-155."

On the day the county court issued its order, it held a hearing to discuss the contents of its order. The court explained that it attached the additional regulations because she read the law to permit her this discretion, and it was her intent to impose some stricter requirements upon Lopez. However, the Harris County regulations only required liability insurance coverage of $100,000, whereas the City's ordinance required coverage of $300,000. The attorney for the City took exception to this perceived conflict between the Harris County regulations and the City's ordinance:

> MS. MAPES: One such difference is Harris County requires $100,000 worth of liability insurance and our insurance policy in our code is 300,000.
>
> THE COURT: Oh, I see. I don't know what the cost difference would be for obtaining that. But, again, I like -- I don't see, really, the need for the 200,000 extra, because the immediate ramification would be for destruction of dogs. So I'll just keep it the same with the 100,000. Because, again, I just want to have some uniformity that we can fall back on without kind of doing that. If there was some other safety thing that I can add to it, I'd like to do that. But if it's just in the case of insurance, I'll leave it at the 100,000.

---

[5] The order cites to an attachment, "violations of the provisions of any requirements of Dangerous Dogs attached," and the sole attachment to the order is a copy of Section 8 of the Harris County regulations pertaining to the requirements of owners of dangerous dogs.

After the hearing the parties corresponded with the aim of working towards Lopez's compliance with the order so that she could reclaim her two living dogs.[6] The record indicates that despite delays, largely related to the enclosure requirements, Lopez satisfied the substantive features of the ordinance compliance requirements. Ultimately, in a brief where Lopez sought to demonstrate her compliance she requested an order from the court releasing the dogs to her custody and effectively limiting her responsibility to pay the City costs incurred "in seizing, acceptance, impounding, and boarding" to the value of her $2,500 bond. The City filed a responsive brief (1) challenging the court's pre-approval of proof of financial responsibility or insurance coverage in an amount less than that required under the City's ordinance, and (2) seeking full payment of costs incurred "in seizing, acceptance, impounding, and boarding" the dogs in accordance with City's ordinance. Both parties attached exhibits and evidence to their respective briefs.

On July 13, 2023, the county court signed an order for the release of the two dogs to Lopez, for the release of the bond funds to the City, and for Lopez to be "absolved of any and all debt owed to the City of Baytown." Following the July 13, 2023 Order, Lopez recovered her two dogs.

The City appeals the trial court's judgment.

## II. Issues and Analysis

Baytown contends that the trial court failed to require Lopez's compliance with the Baytown Code of Ordinances; specifically Baytown argues that the trial court erroneously reduced the Lopez's proof of financial responsibility required from Three-Hundred Thousand Dollars ($300,000.00) per animal to One-Hundred Thousand Dollars ($100,000.00) and that it failed to order that Lopez pay the City

---

[6] On Feb. 16, 2023, one of the dogs, Porsha, died of heartworm infection while in the City's custody.

up-to-date poundage and boarding fees.[7]

We first review whether the trial court's judgment deviates from the City's ordinance, and then if it does, confront the legal question whether the deviation was appropriate, i.e., whether the ordinance is shown to be unreasonable and arbitrary.

## A. Does the county court's judgment deviate from the Baytown Code of Ordinances?

When the language of the trial court's judgment is unambiguous, as in this case, the reviewing court is to interpret the judgment according to its plain language. *Zaidi v. Shah*, 502 S.W.3d 434, 449 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Reiss v. Reiss,* 118 S.W.3d 439, 441–42 (Tex. 2003). Following the dangerous dog determination, the relevant portions of the April 10 Order provides:

IT IS THEREFORE ORDERED that the:

Dangerous dogs' owner, the Defendant, shall be in compliance with all requirements in the City of Baytown, TX, Code of Ordinances, Sections 14-154 and 14-155 for both "HEAVEN" and "BUBBA." This Court also ORDERS the Defendant to reimburse Baytown for any costs incurred in seizing, acceptance, impounding, and boarding for HEAVEN, BUBBA, and PORSHA - including the cost of necropsy.

It is further ORDERED that any violation of the provisions of any requirements of Dangerous Dogs attached will result in an order immediately subject to destruction as outlined in the City

---

[7] Baytown enumerates four issues in its brief, but its issues overlap and are substantially redundant. Additionally, at points in its brief, including in its Prayer, Baytown appears to argue that the court did not require Lopez to adhere to other requirement's imposed by the City's ordinance prior to ordering the release of the dogs. To the extent that the City seeks review on any grounds other than the insurance coverage reduction or poundage and boarding fees, these matters were not properly raised below (not preserved), and otherwise were inadequately briefed lacking proper references to the record or authority. Tex. R. App. P. 33.1, 38.1.

of Baytown, TX, Code of Ordinances, Section 14-155. In the future, should either of the dogs be subject of a finding that they have made an unprovoked attack outside of their enclosure causing death of another animal or person OR that they have made an unprovoked attack outside of their enclosure causing bodily injury to a person, they will be subject to destruction as outlined in the City of Baytown, TX, Code of Ordinances, Section 14-155.

The plain language of the two indented paragraphs provides two distinct operative orders, functioning to set Lopez's goals at two phases: first, requirements to redeem her dogs, and second, compliance requirements to avoid triggering an accelerated euthanasia as an owner of a previously declared Dangerous Dog.[8]

The plain language of the text of the first indented paragraph, requiring that "[Lopez] shall be in compliance with all requirements in [sections 14-154 and 14-155 of Baytown's Code of Ordinances]," can only be interpreted fairly as an express enforcement of those City ordinances cited. Within the context of the county court's jurisdiction and authority, the order supports one reasonable interpretation, that the county court intended to impose the requirements of "14-155" after the county court's dangerous dog determination[9] and at the time of compliance with section 14-154, i.e., "prior to redeeming from the animal control authority." It is further clear that the first indented paragraph imposes the burden on Lopez to prove to the court satisfaction with the requirements of sections 14-154 and 14-155 of Baytown's Code of Ordinances as precondition to redeeming

---

[8] To date, the trial court has only been prompted to enforce the first indented paragraph of the April 10 order in its subsequent July 13 judgment, prompting the release of the dogs. Neither party contends that any motion before the trial court after April 10, nor any subsequent trial court order relates to the second indented paragraph exclusively concerning the application of an event triggering the immediate destruction of dogs previously declared dangerous dogs.

[9] Although both sections reference requirements triggered by the "municipal court's" dangerous dog determination, it is not reasonable to conclude the county court intended to order compliance retrospectively to the time of the municipal court's determination or otherwise based on the municipal court's determination.

the dogs from the animal control authority.

In relevant part, § 14-154 of the Code, titled "Requirements for owner of dangerous dog", provides:

> (a)    Prior to redeeming from the animal control authority a dog determined to be dangerous by the municipal court, the owner of the dangerous dog must:
>
> > (2)    Obtain liability insurance coverage or show financial responsibility in an amount of at least $300,000.00 to cover damages resulting from an attack by the dangerous dog causing bodily injury to a person or animal and provide proof of the required liability insurance coverage or financial responsibility to the animal control authority;
> >
> > . . . .
> >
> > (4)    Pay any cost or fee assessed by the city or the court related to the seizure, acceptance, or impoundment of the dog;[10]

Accordingly, by the terms of the April 10 Order, to redeem her dogs, Lopez was required to pay the City for costs incurred in seizing, acceptance, impounding, and boarding the three dogs, and to prove to the county court she obtained the required liability insurance coverage, $300,000 (or demonstrated equivalent financial responsibility).

However, as noted above, at the April 10 hearing the parties and the court discussed potential conflicts between the ordinances and regulations (referenced in

---

[10] In a provision titled "Poundage and boarding fees", at section 14-173 and reads, in relevant part, as follows:

(a)    The following shall be the fees charged as poundage and boarding for the impoundment of animals as provided in this chapter:

(1)    For taking up and impounding, per head: a.  Household pets, such as dogs, cats and other small animals . . . $25.00

. . . .

(2)    For the boarding of animals, per head, per day . . . .a.    Household pets, such as dogs, cats and other small animals $5.00.

the second indented paragraph), prompting the county court to indicate favor of Harris County's less strict regulation concerning financial responsibility when she stated "just in the case of insurance, I'll leave it at the [$]100,000." The court's oral pronouncement conflicted with the written order, as the written order required compliance with the Baytown ordinance for purposes of redeeming the dogs.

A written judgment or order controls over a trial court's oral pronouncement. *In re K.M.B.*, 148 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Heritage Gulf Coast Properties, Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 657 (Tex. App.—Houston [14th Dist.] 2013, no pet.). By the terms of the Order, Lopez was required to show proof of financial responsibility or liability insurance coverage up to $300,000 per dog. The parties interpreted the court's oral pronouncement as supplanting the written order, such that to redeem the dogs they interpreted the court to have reduced the liability insurance requirement from the $300,000 required in the Baytown Municipal Code to $100,000. Although contrary to the parties' interpretation, we conclude the written order remained controlling during the interim time prior to the trial court's July 10 final order.

After its April 10 Order, the county court was presented with uncontested proof that insurance policies covering damages up to $100,000 for each of the two living dogs were provided to the City on May 19, 2023, the relevant dates and events necessary to calculate the impounding and boarding fees under the City's ordinance. The court was free to take judicial notice of the bond Lopez had posted in the City's favor upon appealing the dangerous dog determination. Thus, when the court ordered the release of Lopez's two dogs in its July 13 Order, the court implicitly modified its prior order (requiring proof of $300,000 of coverage per dog) and reduced the insurance coverage requirement amount to $100,000.

Similarly, in its July 13 Order, the court implicitly indicated that no more than the value of the bond would satisfy the City's "costs incurred in seizing, acceptance, impounding, and boarding [of the three dogs]." We next consider whether it was proper for the county court to deviate from the ordinance as it did.

## B. Whether the provisions of the Baytown Code of Ordinances were shown to be unreasonable and arbitrary?

We construe municipal ordinances the same way we construe statutes. *Powell v. City of Houston*, 628 S.W.3d 838, 842 (Tex. 2021); *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002). Their construction is thus a question of law that we review de novo. City of *Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). City ordinances are "presumed to be valid," and courts "have no authority to interfere unless the ordinance is unreasonable and arbitrary—a clear abuse of discretion." *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (quoting *Hunt v. City of San Antonio*, 462 S.W.2d 536, 539 (Tex. 1971)). It is the burden of the challenging party to demonstrate clearly that the ordinance is unreasonable and arbitrary. *City of San Antonio v. Pigeonhole Parking of Tex. Inc.*, 158 Tex. 318, 311 S.W.2d 218, 223 (1958); see also *City of Pharr v. Tippitt*, 616 S.W.2d 173, 176 (Tex. 1981) (noting that this burden is a heavy one).

Baytown's ordinance, requiring $300,000.00 per dangerous dog proof of financial responsibility requirement, is like many similar legislative mandates for financial responsibility or insurance coverage, devoted to the public, providing security of compensation to victims of the foreseeable dangers and risks posed by the insured's ownership or activity. Although the City's financial responsibility/insurance coverage requirement is higher than the amount required by the State of Texas and the county ($100,000), the legislature has expressly permitted "a county or municipality" to enact "more stringent" requirements and

10

restrictions governing dangerous dogs. Tex. Health & Safety Code § 822.047. Lopez has provided no argument to support that the increased coverage requirement is arbitrary or unreasonable. At minimum, she would have provided the court with proof indicating the difference in cost of obtaining the higher coverage, but no such proof is provided in the record. In short, the record and briefing in this case is insufficient to support a valid challenge to section 14-154's requirement that owners of dangerous dogs must show proof of $300,000 financial responsibility/insurance coverage per dog.

Lopez has not argued that the Ordinance sections defining the impoundment fees and boarding fees were too high as stated in the ordinance, but rather, at best only argued that other sections of the Ordinance are arbitrary and unreasonable in allowing the City to delay a determination that Lopez has complied with the ordinance, and thus increased the boarding fees. On its face the ordinance, imposing $75 per head for impounding the animals and $5 a day for boarding serves a substantial relationship to the public safety and general welfare. *See City of Brookside Vill. v. Comeau*, 633 S.W.2d 790, 793–94 (Tex. 1982). Lopez has not demonstrated why an owner whose dogs are determined to be dangerous should not be required to defray costs otherwise imposed on City taxpayers while the City ensures measures are taken to protect the public, prevent further attacks, and ensure the animals are not dangerous to the public.

### III. CONCLUSION

We therefore reverse and remand for the court to require financial responsibility or equivalent liability insurance coverage for each remaining dogs in compliance with the City's ordinance, and to recalculate the City's "costs incurred in seizing, acceptance, impounding, and boarding [of the three dogs]" to accurately account for each day each dog was kept in the animal shelter in accordance with

11

the City's ordinance and order Lopez to pay the outstanding unpaid difference as recalculated.

/s/     Randy Wilson
Justice

Panel consists of Chief Justice Christopher, and Justices Zimmer and Wilson.